IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AQILA THOMAS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BALA NURSING & RETIREMENT | : | NO.  11-5771 |
| CENTER, Limited Partnership | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE                                                                                                May 7, 2012
UNITED STATES MAGISTRATE JUDGE

I.      **INTRODUCTION**

Plaintiff Aqila Thomas ("Thomas") brought this action against her former employer, Bala Nursing & Retirement Center, Limited Partnership ("Defendant" or "Bala") asserting claims under the Americans with Disabilities Act, 42 U.S.C. § 1211, *et seq.* (the "ADA") and the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (the "FMLA") relating to, *inter alia*, her termination.  (Doc. 1.) Bala filed its answer with affirmative defenses on October 4, 2011.  (Doc. 4.)

While employed by Bala, Thomas, a licensed practical nurse, was a member of the National Union of Hospital and Healthcare Workers 1199c (the "Union").  The Union's collective bargaining agreement with Bala provided for a comprehensive grievance procedure by which a member could challenge certain employment-related decisions of the employer.  Thomas availed herself of this procedure following her termination and participated in a grievance meeting challenging that decision.  As came to light in Thomas's February 3, 2012 deposition in this litigation, she tape-recorded this meeting without the knowledge or consent of any of the other participants.  On March 15, 2012, more than five months after answering the complaint, Bala filed a counterclaim for a violation of the Pennsylvania Wiretapping and Electronic Surveillance Act, 18 Pa. C.S. § 5701, *et*

*seq.* (the "Wiretap Act"), seeking liquidated damages of $1,000, as well as punitive damages and counsel fees. (Doc. 24.) Plaintiff has moved to strike the counterclaim (Doc. 25) and Bala has filed its response asking that the motion be denied (Doc. 27) or in the alternative that the Court grant a Motion for Leave to File a Counterclaim that it attached to its response and which it offered to separately file (Doc. 27-1). Plaintiff has not filed any further reply. The matter is now ripe for resolution.

## II.   THE PARTIES' CONTENTIONS

Thomas asserts that the counterclaim should be stricken for failure to comply with Fed. R. Civ. P. 15(a)(2). As to cases in which the pleading to be amended was filed more than 21 days earlier, that rule provides that "a party may amend its pleading only with the opposing party's written consent or the Court's leave." Fed. R. Civ. P. 15(a)(2). She also argues that the counterclaim must be stricken pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that the Court lacks subject-matter jurisdiction over a counterclaim that is not "compulsory" but "permissive."[1]

Bala concedes that neither Thomas's consent nor the court's permission was ever sought prior to the filing of the counterclaim, but asserts that neither is required; that the claim is compulsory under Fed. R. Civ. P. 13(a)(1)(A) and thus was properly pled in March 2012; and that the claim falls within the supplemental jurisdiction of the court pursuant to 28 U.S.C. § 1367. Bala also points out that it has now sought leave of court to amend its answer (*see* Doc. 27-1, filed Apr. 3, 2012) and thus remedied the Rule 15(a)(2) deficiency.

---

[1]The parties agree that there is no diversity and that the cause of action asserted in the counterclaim is based upon state law.

### III. DISCUSSION

#### A. The amendment of Bala's answer to add the counterclaim

We initially consider the question raised by Plaintiff concerning Bala's failure to comply with Fed. R. Civ. P. 15(a)(2). It is undisputed that Defendant's failure to obtain consent or to seek leave would preclude the filing of the counterclaim. However, Defendant has now properly sought leave and demonstrated that the information giving rise to the claim of the Wiretap violation had not matured until well after service of the last filed pleading. Thus, we conclude that "justice so requires" that we accept the counterclaim as timely brought subject only to Plaintiff's motion to strike on jurisdictional grounds. *See* Fed. R. Civ. P. 13(e) (providing for counterclaim maturing after pleading); Fed. R. Civ. P. 15(a)(2) (requiring court to "freely give" leave to amend pleading "when justice so requires").

#### B. The Court's jurisdiction over the Wiretap Act claim

On the assumption that leave could be given for the amendment of the answer, Plaintiff asks that the Court nonetheless strike the counterclaim from the amended answer because it is subject to dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Congress has described the Court's jurisdictional authority over additional claims, with some exceptions not applicable here:

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The Supreme Court has described the test of the court's "constitutional power" to determine an ancillary state-law claim as depending on whether there is a "common nucleus of

operative fact" between the state claim at issue and the accompanying federal claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).[2]

As our Court of Appeals has observed, this standard is satisfied if the pleader can establish that the counterclaim it seeks to bring meets the criteria for a compulsory counterclaim under Fed. R. Civ. P. 13(a)(1), which requires that the answering party state as a counterclaim any claim that:

> (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and
> (B) does not require adding another party over whom the court cannot acquire jurisdiction.

Fed. R. Civ. P. 13(a)(1).[3] *See Ambromorage v. United Mine Workers of America*, 726 F.2d 972, 990 (3d Cir. 1984) ("Any counterclaim based on the same 'transaction or occurrence' as the underlying federal claim [under *Gibbs*] necessarily has a 'common nucleus of operative fact' with that claim" under Rule 13(a)(1)). The operative question in determining if a claim is a compulsory counterclaim is whether it bears a logical relationship to an opposing party's claim. In *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631 (3d Cir. 1961), our Court of Appeals stated that a counterclaim is "logically related" to the opposing party's claim "where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." *Great Lakes Rubber Corp.*, 286 F.2d at 634. Both fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action where multiple claims: (1) involve many of the same factual issues, (2) the same factual and legal issues,

---

[2] The Court has also determined that compulsory counterclaims fall within the scope of ancillary jurisdiction. *See Moore v. New York Cotton Exch.*, 270 U.S. 593 (1926).

[3] Rule 13(e) also provides for a counterclaim that matures or is acquired after pleading, authorizing the Court to "permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." Fed. R. Civ. P. 13(e).

or (3) are offshoots of the same basic controversy between the parties. *Id.  See also Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974) (noting that *Great Lakes* analysis has been generally used by several federal courts).

Defendant argues that the claims under the ADA and FMLA advanced by Thomas "involve precisely the same occurrences – Plaintiff's employment with the Defendant, and the cessation thereof, and more specifically, Plaintiff's and Defendant's statements and representations made during the grievance meeting that challenged Plaintiff's termination." (Def.'s Mem., Doc. 27, at 4.) Thomas contends that the counterclaim here does *not* arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim," Fed. R. Civ. P. 13(a)(1)(A), and that "Defendants seek to intertwine a post-employment act by Plaintiff in a case that has nothing to do with same . . . , " as the employment issues which gave rise to the underlying federal claim had already occurred when the Wiretap Act violation occurred. (Pl.'s Mot., Doc. 25, at 7.)

Applying the guidelines set forth above, however, the best that can be said for Bala's position is that there was arguably some connect or "offshoot" of the same controversy.  It has not, however, credibly made the case that the "same factual and legal issues" are involved.  Bala overlooks the critical fact that the elements necessary for it to establish the counterclaim are utterly distinct from the elements necessary to establish Plaintiff's underlying claims.  The core facts and legal issues associated with the establishment of the Wiretap Act claim do not bear any similarity to the factual and legal issues involved in Plaintiff's employment discrimination claim.  While it may be true, as Bala asserts, that the subject matter of the tape-recorded grievance meeting concerned alleged discrimination and retaliation on the part of Bala, the content of the material recorded is not essential to a claim under the Wiretap Act.  Rather, the aggrieved party can establish a prima facie case of a

violation of that statute merely by demonstrating:

>  (1) that he engaged in a communication;
>  (2) that he possessed an expectation that the communication would not be intercepted;
>  (3) that his expectation was justifiable under the circumstances; and
>  (4) that the defendant attempted to, or successfully intercepted the communication, or encouraged another to do so.

*Agnew v. Dupler*, 717 A.2d 519, 522 (Pa. 1998). We are unaware of any authorities, however, that suggest that the substance of the conversation bears upon the question of whether or not the Pennsylvania statute may have been violated. The subject of the meeting that was recorded — concerning the question of whether Plaintiff submitted certain FMLA paperwork when she notified Bala of her medical condition — is certainly important relative to Plaintiff's case. The subject matter of the recording does not, however, sufficiently intertwine the underlying case to Bala's Wiretap cause of action as to make the presentation of this counterclaim compulsory.[4] There simply is not an adequate similarity between the factual issues in the case to establish a "common nucleus of operative facts" and, more significantly, it is clear that the legal issues between the original claim and the counterclaim are distinct. Bala's counterclaim cannot be considered compulsory under Fed. R. Civ. P. 13(a)(1) and does not satisfy the standard under 28 U.S.C. § 1367(a) for supplemental jurisdiction. This counterclaim is thus subject to dismissal under Fed. R. Civ. P. 12(b)(1). Accordingly, we will grant Plaintiff's motion and strike the counterclaim. An appropriate order follows.

---

[4] We make no determination, nor should counsel assume that we intend to make any determination, with respect to the evidentiary value or even the admissibility of any evidence, whether recorded or not, that would come out of this February meeting. We see this as an entirely separate question.